# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ANGELA CRUTCH, | Case No. 4:21-cv-02725 |
| Plaintiff, | |
| v. | **ORIGINAL COMPLAINT** |
| RELIANT PRO REHAB, LLC d/b/a RELIANT REHABILITATION | JURY TRIAL DEMANDED |
| Defendant. | |

## ORIGINAL COMPLAINT

Plaintiff Angela Crutch ("Plaintiff" or "Crutch"), for her Original Complaint against Reliant Pro Rehab, LLC, d/b/a Reliant Rehabilitation ("Defendant" or "Reliant"), alleges as follows:

1. This action is brought by Crutch arising from Reliant's retaliating against her in response to her investigations and efforts to stop Reliant's false and fraudulent statements, reports and claims for payment that Reliant and its affiliated companies routinely and intentionally submitted to the United States Government. Plaintiff files this Complaint against Defendant pursuant to the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. §§ 3730(h), to recover damages for wrongful retaliation, and alleges as follows:

### I.  JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

3. This Court has personal jurisdiction and venue over Defendant pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a). Jurisdiction is proper over the Defendant because the Defendant can be found in, resides in, and/or has transacted business within this Court's jurisdiction, and some of the acts in violation of 31 U.S.C. § 3729 occurred within this district.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) & (c) and 31 U.S.C. § 3732(a) because Defendant resides in or transacts business in this district and because a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in Navasota, Grimes County, which is within this District. Plaintiff is familiar with Defendant's fraudulent practices alleged in this Complaint and is aware that the pervasive misconduct at issue occurred in this District.

## II. PARTIES

5. Plaintiff Angela Crutch is a former employee of Reliant, and a citizen and resident of Montgomery County, Texas.

6. Defendant Reliant Pro Rehab, LLC, d/b/a Reliant Rehabilitation is a limited liability company incorporated and doing business in Texas. Its registered address is 5212 Village Creek Drive, Plano, TX 75093. It can be served through its registered agent, C T Corporation System, 1999 Bryan St., #900, Dallas TX 75201-3136, or through its attorney who is representing Reliant in this matter, David R. Jimenez, Jackson Lewis P.C., 90 State House Square, 8th Floor, Hartford, CT 06103, David.Jimenez@jacksonlewis.com.

## III. FACTS

**A. Crutch's Employment at Reliant**

7. Angela Crutch ("Crutch") began working for Reliant as a Speech Language Pathologist in April of 2017. She worked as a traveling therapist and as a full-time therapist in at least eleven of Reliant's locations.

**B.     Crutch Opposes Reliant's FCA Violations and Reliant Retaliates with Criticism, Pay Cut, and Transfer**

8. In November of 2019, Crutch reported to Reliant's compliance department that two of Reliant's physical therapy assistants at the Brenham skilled nursing facility were engaging in Medicare fraud, by billing for services not provided.

9. Although Reliant confirmed that Crutch's report was accurate and terminated the two PT assistants, Reliant retaliated against Crutch.

10. Rather than praising Crutch for speaking up about Medicare fraud and reporting what she saw, Reliant retaliated against Crutch, criticizing her for failing to maintain harmonious relationships with her coworkers that were defrauding the Government.

11. Reliant made clear that it did not want its employees to blow the whistle on fraud if it interfered with the "harmony" of coworkers' relationships.

12. The retaliation escalated from the criticism leveled at Crutch in November of 2019 to Reliant cutting Crutch's pay and transferring her to a different location in December 2019.

13. Crutch was informed of the pay cut and transfer during a phone call with Crutch's regional manager and a representative of Reliant's HR department. Crutch was told that Reliant was cutting her pay and transferring her because her coworkers complained that Crutch's whistleblowing evidenced a bad attitude.

**C.     Second Retaliation**

14. Crutch was transferred from the Brenham facility to Reliant's facility in Navasota, where she immediately witnessed rampant Medicare fraud by the Physical Therapist (PT), Occupational Therapist (OT) and Physical Therapy Assistant (PTA). Crutch was told by various

3

Nexion nursing staff members, that the fraud she witnessed had been going on for years at Reliant's Navasota facility.

15. The fraud witnessed by Crutch was simple—Reliant's therapists (including Palak Bhatt, Holden Whitley, and Jennifer Vaughn) billed for services not provided. For example, Reliant therapists who did not provide therapy services to a patient at all or who provided therapy for less than 20 minutes would routinely bill for 50-87 minutes.

16. Additionally, frequently PT and OT would both see a patient at the same time for less than 20 minutes but would each bill 50 to 87 minutes separately (as if they each saw the patient separately for 50 to 87 minutes individually.)

17. Additionally, the quality of the services rendered was often quite poor, as witnessed by Crutch and evidenced and reported by Nexion nursing staff members, other Reliant therapists, and the patients themselves.

18. On or about May 4 Crutch reported the fraud she witnessed at Reliant's Navasota location to Kayla Gillispie, the Director of Rehabilitation.

19. Crutch had previously reported the fraud to Gillispie at least three times previously after patients complained to Crutch.

20. Gillispie responded that she was fully aware of the Medicare fraud happening in that building.

21. When Crutch arrived to work on the day following her reporting the fraud, she found that Gillispie had told Palak Bhatt, Holden Whitley, and Jennifer Vaughn that Crutch reported their fraud and that they had moved their desks away from Crutch's desk.

22.     They told Crutch that they moved their desks because they were afraid of her. Crutch reported this to Reliant's HR department as well, and was asked to speak to Reliant's Compliance department, which she did for almost an hour.

23.     Reliant's retaliation for this activity followed quickly. The day after she made this report to Reliant's HR and Compliance departments, HR informed Crutch that she was being put on paid administrative leave. The justification was that Crutch threatened Nexion's Activities Director, a ridiculous falsehood.

24.     After being on paid administrative leave for 4 days (Monday through Thursday), Crutch returned to work and was told that the investigation concerning the PT, OT, and PTA found nothing significant and that some training would be provided to all staff concerning group billing.

**D.     Third and Final Retaliation**

25.     On Friday, May 21, Reliant engaged in its third and final act of retaliation against Ms. Crutch, terminating her. Ms. Crutch was told that she would be given no more hours to work for Reliant's Navasota facility and to pack her belongings and leave.

**E.     Fraud on the Federal Government**

26.     Crutch had good reason to believe that Reliant was participating in fraud on the Medicare system, as described above.

27.     Defendant's ongoing scheme violates the federal False Claims Act because (as stated above) they knowingly submitted false information in order to obtain Medicare payments from the United States Treasury.

28.     Defendant violated the False Claims Act by knowingly, or with a reckless disregard for the truth, causing the submission of false or fraudulent claims; for making, using or causing to be made or used false records or statements material to false or fraudulent claims; for

making, using, or causing to be made or used false records or statements material to avoid obligations to pay or transmit money to the Government, and/or for knowingly concealing or knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the Government, including, but not limited to the submission of false or fraudulent statements regarding the services provided to the residents of Reliant's facilities, including the facilities in Brenham, and Navasota.

**F.      Crutch's Experience After Termination**

29.    After Reliant terminated Crutch, she experienced severe mental anguish and emotional distress. She also had difficulty finding a new job, suffering lost wages.

### IV.    RETALIATION CLAIM

30.    Crutch was criticized, had her pay cut, was transferred, and was terminated by Reliant all in retaliation for her continued activity in trying to stop Reliant's fraud on the federal government.

31.    As described above, Crutch engaged in protected activity when she investigated and opposed the fraudulent nature of Defendant's schemes to obtain money from the Government in the form of Medicare payments.

32.    Specifically, Crutch opposed Defendant's practice of making fraudulent representations to CMS in order to ensure that Defendant continued to receive federal Medicare funds, which practice could reasonably lead to a viable claim under the FCA and demonstrated a distinct possibility of FCA litigation.

33.    Crutch's actions were motivated by her good faith belief that Defendant was committing fraud against the United States.

34.    Defendant was on notice that Crutch was investigating and opposing the fraud as evidenced by Crutch's statements to Kayla Gillispie and to personnel in Reliant's HR

Department. These statements put Defendant on notice that litigation was a reasonable possibility.

35. Defendant retaliated against Crutch by criticizing her, cutting her pay, transferring her to a different location, and finally terminating her, in retaliation for protected activities including investigating and opposing fraudulent practices by Defendant.

36. Defendant's retaliation against Crutch was motivated by her protected activity described in this Complaint. Each of Defendant's retaliatory acts happened shortly after Crutch's engaging in the protected activity. Crutch's protected activity is the only possible cause of Defendant's retaliatory acts, because Crutch was otherwise recognized as doing an excellent job.

37. Defendant's retaliation and discrimination inflicted damages on Crutch, including, but not limited to, past and future earnings, lost employment benefits (including health insurance benefits and retirement contributions), job-search expenses, humiliation, mental anguish, emotional distress, and litigation costs.

## V.     THE FALSE CLAIMS ACT

38. The False Claims Act provides, *inter alia*, that any person who--

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C)     conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); . . . or

(G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C.A. § 3729 (a)(1)(A-G).

39. The term "claim" includes "any request or demand, whether under a contract or otherwise, for money . . . that—

> (i) is presented to an officer, employee, or agent of the United States; or
>
> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--
>
>     (I) provides or has provided any portion of the money or property requested or demanded; or
>
>     (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . .

31 U.S.C.A. § 3729 (a)(2).

40. The Relief from Retaliatory Actions provision of the False Claims Act states:

> (1) In general.
> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
> (2) Relief.
> Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. . .

31 U.S.C.A. § 3730(h).

## VI. CAUSES OF ACTION

### COUNT ONE

### RETALIATORY DISCHARGE UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §3730(h)

41. All paragraphs of this Complaint are incorporated herein by reference.

42. Plaintiff engaged in protected activity when she investigated and reported the fraudulent nature of Defendant's schemes.

43. Plaintiff's actions were aimed at matters that reasonably could lead to a viable claim under the FCA and/or demonstrated a distinct possibility of FCA litigation.

44. Plaintiff's actions were motivated by her good faith belief that Defendant was committing fraud against the United States.

45. Defendant was on notice that Plaintiff was investigating the fraud as evidenced by her multiple conversations wherein she complained about these fraudulent practices, including statements she made shortly before she was terminated. These conversations put Defendant on notice that litigation was a reasonable possibility.

46. Defendant retaliated against Plaintiff by criticizing her, cutting her pay, transferring her, and finally terminating her employment in retaliation for protected activities including investigating and opposing fraudulent practices by Defendant in violation of the anti-retaliation provisions of the FCA, 31 U.S.C. § 3730(h).

47. Defendant's termination of Plaintiff was motivated by Plaintiff's protected activity described in this Complaint. Defendant committed each retaliatory act shortly after Plaintiff engaged in protected activity, and the protected activity is the only possible cause of the termination of Plaintiff, as she was otherwise recognized as doing an excellent job.

48. Defendant's retaliation and termination inflicted damages on Plaintiff, including lost income, lost employment benefits, job search expenses, mental anguish and emotional distress.

49. Pursuant to 31 USC §3730(h)(2), Plaintiff is entitled to two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, past and future earnings, lost employment benefits (including health insurance benefits and retirement contributions), job-search expenses, damages for humiliation, mental anguish, and emotional distress, pre and post-judgment interest, litigation costs and attorneys' fees, and any other relief that this Court deems appropriate, all collectively in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief:

1. Two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, past and future earnings, lost employment benefits (including health insurance benefits and retirement contributions), job-search expenses, damages for humiliation, mental anguish, and emotional distress, pre and post-judgment interest, litigation costs and attorneys' fees, and any other relief that this Court deems appropriate, all collectively in an amount to be determined at trial;

2. An award to Plaintiff pursuant to 31 U.S.C. §3730(d) of reasonable attorneys' fees, costs, and expenses; and

3. Such other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby demand a jury trial on all issues triable to a jury.

Dated: August 20, 2021.

                                        Respectfully submitted,

                                        /s/ Cory S. Fein
                                        Cory S. Fein
                                        Cory Fein Law Firm
                                        712 Main Street, Suite 800
                                        Houston, TX 77002
                                        (281) 254-7717
                                        (530) 748 - 0601 (fax)
                                        cory@coryfeinlaw.com

                                        *For Plaintiff Angela Crutch*